|  | AUSA: | Sara Woodward | Telephone: (313) 226-9180 |
|---|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | Special Agent: | Nate Knapper | Telephone: (313) 965-2323 |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America
v.
MICHAEL HAWKINS-DAY

Case: 2:17-mj-30671
Assigned To : Unassigned
Assign. Date : 12/18/2017
Description: CMP USA V
HAWKINS-DAY (BG)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___October and November 2017___ in the county of ___Oakland and elsewhere___ in the ___Eastern___ District of ___Michigan___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 2422(b) | Online enticement |

This criminal complaint is based on these facts:
See attached affidavit.

☐ Continued on the attached sheet.

_Complainant's signature_

Special Agent Nate Knapper, FBI
_Printed name and title_

Sworn to before me and signed in my presence.

Date: December 18, 2017

City and state: Detroit, Michigan

_Judge's signature_

Magistrate Judge David Grand
_Printed name and title_

# AFFIDAVIT

I, Special Agent Nate Knapper, swear and affirm as follows:

## I. INTRODUCTION

1. I am employed as a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since August, 2016. I am currently assigned to the FBI's Southeast Michigan Trafficking and Exploitation Task Force (SEMTEC). I am responsible for conducting and assisting in child exploitation investigations, including the sex trafficking of minors and other crimes against children. I have participated in the execution of multiple search warrants relating to crimes against children. As a result of my training and experience, I am familiar with techniques and methods of operation used by individuals involved in sex trafficking to conceal their activities from detection by law enforcement.

2. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3. This affidavit is made in support of an application for a criminal complaint and arrest warrant for MICHAEL HAWKINS-DAY for violations of 18 U.S.C. § 2422(b) (online enticement).

4. Because this criminal complaint is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are

1

necessary to establish probable cause to believe that HAWKINS-DAY has violated 18 U.S.C. § 2422(b).

I. **PROBABLE CAUSE**

5. On or about November 2, 2017, a twelve year-old boy ("MV1") was interviewed by a child/adolescent forensic interviewer. MV1 resides in the Eastern District of Michigan. MV1's forensic interview was audio and video recorded.

6. During the forensic interview, MV1 stated:

   a. Using the mobile application Kik, MV1 encountered an individual known to him as "Michael." Michael asked MV1 his age, and MV1 told Michael that he was 12 years old. Michael told MV1 that he was in his 20's. Michael told MV1 that he lived in Grand Rapids, Michigan.

   b. MV1 initially communicated with Michael on Kik. MV1 also communicated with Michael on Snapchat.

   c. Michael asked MV1 a lot of questions, which MV1 believed was an attempt by Michael to determine if he was a real child. Michael asked MV1 for a live video to confirm he was real, and also asked MV1 for a photograph of his "private parts." MV1 denied sending Michael the video and photograph he requested.

   d. On or about October 27, 2017, MV1 received a direct message from Michael on Snapchat. In the message, Michael asked MV1 if he would

2

like Michael to pick him up. MV1 responded that he did, and Michael asked MV1 if it was a trap.

e. On or about October 27, 2017, at approximately 3:00 AM, Michael arrived at MV1's mother's home in the Eastern District of Michigan and picked up MV1. MV1 stated that Michael was driving a black two-door car, and that the seats had to be moved forward to get in the back seat. MV1 got into the car, and Michael drove to a park near MV1's home.

f. At the park, Michael and MV1 stayed in Michael's car. In the car, Michael put his mouth on MV1's "private parts," and Michael had MV1 put his mouth on Michael's "private parts." MV1 further disclosed that Michael put his "private part" in MV1's "behind."

g. MV1 was not sure how much time passed during the sexual activity and stated that Michael used a condom and told MV1 that he didn't want to leave his DNA behind. MV1 also stated that Michael kept looking around the park while they were together, and that Michael said he could not believe that he was not being trapped.

h. While engaged in sexual activity, Michael told MV1 that he should be careful with who he talked to on the internet because they could kidnap

or kill him. After the sexual activity ended, Michael dropped MV1 off at his mother's home.

i. After this incident, Michael continued to communicate with MV1. On or about November 1, 2017, in the early morning hours, Michael again picked up MV1 from his mother's home. On this occasion, Michael was driving the same car (a black two-door vehicle), and Michael took MV1 back to the same park near MV1's house. While at the park in Michael's car, the two engaged in the same activity as previously described above. MV1 disclosed that prior to meeting Michael this time, Michael asked if he (Michael) could bring a friend. MV1 told Michael no.

j. MV1 described Michael as an adult African-American male, with an "afro" hair style. MV1 said that Michael's Snapchat screen name was **jmikeyy**.

k. Prior to the forensic interview, MV1 deleted the Snapchat application from his cell phone because he was afraid he would get in trouble at home.

7. Title 18, United States Code, Section 2422(b) (online enticement) prohibits using the "mail or any facility or means of interstate and foreign commerce," to persuade, induce, entice, or coerce a minor to engage in "any sexual activity for which any person can be charged with a criminal offense." It is a felony under

4

Michigan law for an adult to engage in sexual intercourse with a person under thirteen years of age. See Mich. Comp. Laws § 750.520b.

8. On or about November 3, 2017, Detective Teresa Young took custody of some items belonging to MV1, including an Apple iPhone 7 Plus. A review of MV1's iPhone identified a contact saved in the phone for Snapchat username **jmikeyy** under the name Michael.

9. On or about November 3, 2017, Detective Young obtained a search warrant for Snapchat screen name **jmikeyy** and served it to the company. On or about November 6, 2017, Snapchat confirmed receipt of the warrant. On or about November 14, 2017, Detective Young received a Letter and Certificate of Authenticity and account information for Snapchat screen name **jmikeyy**.

10. The information received from Snapchat for **jmikeyy** indicated that the account was registered using email address **mikehh55@icloud.com,** and that the account had been accessed by multiple IP addresses. Many of the IP addresses used to access the account appeared to be Virtual Private Network (VPN) IPs. Your affiant is aware, through training and experience, that VPNs are used for privacy by businesses and private individuals alike.

11. Despite the fact that Snapchat account **jmikeyy** was often accessed using what appear to be VPN IP addresses, one of the addresses used to access the account

5

appears to be genuine. Specifically, IP address **68.46.187.205** was used to access the account as recently as March 8, 2017, and as early as October 7, 2016.

12. The data received from Snapchat pursuant to the search warrant described above also included some conversations between **jmikeyy** and other Snapchat users. On July 18, 2017, **jmikeyy** sent a message to another user that said, in part: "Every device in my apartment is setup on something that makes the internet think I live in Chicago (which I don't) so tracking me would lead someone to a dead end..."

13. While reviewing the data from Snapchat, law enforcement found a photograph, sent from **jmikeyy** to another Snapchat user which depicted an African-American male with an afro-style hair cut with black facial hair around the mouth and chin. The following text appeared transposed over the image, "Lol you've seen me.. but here I look kinda shitty cuz I just woke up."

14. On or about November 21, 2017, Special Agent Ray Nichols conducted an FBI database search for email account **mikehh55@icloud.com**. The results of that search indicated that **mikehh55@icloud.com** was associated with a Kik username (hereinafter Kik User A[1]) that was under investigation by the Denver Division of the FBI for participating in a Kik group chat that shared child pornography files.

---

[1] The Kik username is known to law enforcement but not included in this publicly filed document to protect an ongoing investigation.

6

15. Agent Nichols has learned from the Denver Division of the FBI that on or about August 22, 2017, Kik User A became a member of a Kik group chat that was focused on sharing child pornography images and videos.

16. Agent Nichols has reviewed the archive of the Kik group chat from August 22, 2017 to September 4, 2017. Kik User A was a member of this group chat from August 22, 2017 to September 1, 2017. During this time period, members of the group chat shared approximately 240 files. These files generally appeared to depict children either lasciviously displaying their genitals or engaged in sex acts with other children or adults. Five of those files are described below:

   a. File 1 (posted 8/22/17): This is an image file which appears to depict a female toddler wearing only a diaper. The toddler appears to be performing oral sex on an adult male.

   b. File 2 (posted 8/23/17): This is an image file which appears to depict two completely nude prepubescent female children. The children are posed lying on their backs with their feet/legs in the air exposing their genitals.

   c. File 3 (posted 8/27/17): This is an image file which appears to depict a completely nude prepubescent female child. The child is lying on her back with her legs spread, she uses her fingers to spread open her vagina.

   d. File 4 (posted 8/28/17): This is an image file which appears to depict a completely nude pre-pubescent female child wearing a strap on sex toy. A second female, approximately teenaged, is depicted licking the sex toy while the other child holds her head.

7

e. File 5 (posted 8/30/17): This is an image file which appears to depict two pre-pubescent female children. Both children are completely nude. While one child lies on her back, the second child performs oral sex on her.

17. Agent Nichols learned that on or about October 4, 2017, the Denver Division of the FBI served a subpoena to Kik requesting subscriber data for Kik User A. On or about October 5, 2017, Kik provided a response to the subpoena which indicated that the account was registered using email address **mikehh55@icloud.com**. The return also indicated that the email account was confirmed. Your affiant is aware that in order to confirm an email account with Kik, that the user of that email account must login to the email account, access an email sent from Kik, and then click a verification link.

18. While reviewing the subscriber data obtained from Kik, Agent Nichols observed many of the same IP addresses, believed to be VPNs, utilized by the Snapchat account **jmikeyy**. Agent Nichols also observed that the Kik account infrequently utilized IP address **68.46.187.205** also used by Snapchat account **jmikeyy**. This IP address was most recently used on October 5, 2017.

19. On or about November 21, 2017, Agent Nichols used a publicly available database to identify the internet service provider of IP address **68.46.187.205** as Comcast Cable.

8

20. On or about November 27, 2017, Agent Nichols obtained and served a subpoena to Comcast Cable requesting subscriber information for IP address **68.46.187.205** utilized on October 5, 2017 at 00:45:10 UTC time. On the same date, Comcast Cable provided the following subscriber information:

> Subscriber: Michael Hawkins Day
> Service Address: ***8 Pheasant Ridge Ave SE, Apartment 13, Grand Rapids, Michigan

21. On or about November 27, 2017, an FBI analyst began research into the above listed subscriber. That analyst located Michigan Driver's License information and a photograph for MICHAEL LAWRENCE HAWKINS-DAY, date of birth XX/XX/1989. The Michigan Driver's License photo for Hawkins-Day appeared to depict the same person depicted in the photograph that **jmikeyy** sent to another Snapchat user (described above in paragraph 14).

22. Also on or about November 27, 2017, the FBI conducted a query of motor vehicles registered to MICHAEL LAWRENCE HAWKINS-DAY. That query indicated that HAWKINS-DAY has registered a 2008 Honda Accord, two door vehicle. The car has Michigan plate *******. A search of the VIN indicated that the Honda Accord was black in color. The vehicle is registered to HAWKINS-DAY at his residence.

23. The investigation also determined that HAWKINS-DAY is an employee of Meijer Inc. HAWKINS-DAY has an M Perks account. Meijer Inc has provided law

9

enforcement with information about the use of HAWKINS-DAY's M Perks account. This information shows that HAWKINS-DAY used his M Perks account to purchase Bud Light Straw-Ber-ita on October 27, 2017 at 8:35 p.m. at a Meijer store in Southgate, Michigan.

24. On December 18, 2017, federal law enforcement executed a search warrant at HAWKINS-DAY's apartment in Grand Rapids, Michigan. HAWKINS-DAY was present during the execution of the warrant. Several electronic devices, including a black Apple iPhone, model a1661 were seized on December 18, 2017. The phone was locked and password protected. Examination of the phone indicated that "Touch ID" was enabled on the device. Agent Nichols asked HAWKINS-DAY to place his finger on his phone to unlock the device, but HAWKINS-DAY declined to do so.

25. Although HAWKINS-DAY's phone was locked, Special Agent Raymond Nichols was able to swipe left on the device to see the most recently used applications, or "apps." The most recently used applications included Snapchat and Kik, the two applications that MV1 used to communicate with HAWKINS-DAY. Agent Nichols was also able to tell that the Subject Device used VPN, or a virtual private network.

26. During the search of HAWKINS-DAY's apartment, Special Agent Adam Christenson performed a forensic preview on two of HAWKINS-DAY's computers. On HAWKINS-DAY's desktop computer, Agent Christensen located a video of

10

child pornography depicting the genitals of a minor girl that appeared to be between 10 to 12 years old. The video was approximately 1-2 minutes long. Agent Christensen also observed that both HAWKINS-DAY's desktop and laptop computers had VPN software installed.

## II. CONCLUSION

27. Based upon the foregoing, there is probable cause to believe that HAWKINS-DAY violated 18 U.S.C. § 2422(b) (online enticement).

Nate Knapper
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me this 18th day of December 2017:

DAVID R. GRAND
UNITED STATES MAGISTRATE JUDGE