UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                      CRIMINAL NO. 18-20006

v.                                   HON. PAUL D. BORMAN

MICHAEL HAWKINS-DAY,

      Defendant.

_____/

**Government's Sentencing Memorandum**

    No scientific, psychological, or sociological study or data exist to suggest that autism spectrum disorder causes a sexual interest in children. Hawkins-Day twice traveled over two hours to sexually assault a 12 year old boy. He did it, not because he is mentally ill, but because he either cannot or will not control his sexual urges toward children.

    Defendant Michael Hawkins-Day stands convicted of coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). For the reasons stated in this memorandum, the government believes a sentence of **188 months'** imprisonment is "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

## I.     Facts and procedural history

In the fall of 2017, Defendant sought out a child for his own sexual pleasure. Defendant targeted his victim in the most common place he knew to find adolescents: social media.[1] At first, Defendant acted suspicious, being extra careful to determine if MV-1 was a child, or law enforcement.  Satisfied that MV-1 passed the test of being a real child, Defendant arranged to pick the child up from his home, still checking to be sure that he was not being trapped by police.

At approximately 3:00 a.m., Defendant, having driven well over two hours, instructed MV-1 to get in his car.  From there, Defendant took MV-1 to a park, and sexually assaulted the child.  According to MV-1, Defendant performed oral sex on him, and then had MV-1 do the same to him.  After that, Defendant anally raped the child.   Still being careful, Defendant continuously kept watch for the police. Defendant told MV-1 that he wore a condom to be sure not to leave behind any DNA.  Again, about a week later, Defendant returned to MV-1's home and took him to the park in the middle of the night.  Again, Defendant sexually assaulted this little boy.

During the course of the investigation, law enforcement tracked down Defendant's Snapchat account.  Defendant was using a "virtual private network"

---

[1] The two social media applications used here are Snapchat and KIK.  Both applications allow users to send text, images, and videos over the internet.

(VPN), which allows for individuals to secretly access the internet while masking their true location.  In fact, Defendant boasted about this to others on Snapchat: "Every device in my apartment is setup on something that makes the internet think I live in Chicago (which I don't) so tracking me would lead someone to a dead end..."

Defendant was wrong.  FBI continued to investigate and found his KIK account information.  Turns out, Denver FBI had Defendant under investigation for trading child pornography files online.

By December 2017, law enforcement located and arrested Defendant.  They found evidence of VPN software on all Defendant's devices.  They also found evidence of child pornography.  In sum, agents recovered 385 images and 113 videos that showed children being sexually assaulted, or being forced to lasciviously display their genitals.

On March 20, 2018, Defendant pleaded guilty to online enticement of a child, under a Rule 11 plea agreement.  There is an agreement "not to prosecute" the distribution, receipt, and possession of child pornography stemming from the Western District of Michigan.  The parties miscalculated the guideline range due to an error in calculating the offense level.  The probation department correctly determined Defendant's guideline range to be 188 – 210 months' imprisonment.  But for the purposes of this sentencing hearing, the government will abide by the Rule

11 plea agreement, and not seek a sentence outside of the previously relied on range of 151 – 188.

This Court set sentencing for July 27, 2018, at 2:00 p.m.

## II.     The factors under 18 U.S.C. § 3553(a) warrant a 188 month sentence.

### A. The nature and circumstances of the offense

Defendant brazenly presents this offense as a "unique and tragic" situation—for himself.  Glaringly absent from his self-serving play at sympathy from this Court is the fact that the nature and circumstances of this offense involve this Defendant, a 29 year old man, coercing and forcing a 12 year old little boy into having oral and anal sex with him. Unfortunately, there is nothing "unique" about the sexual exploitation of a child.  But most certainly, it is "tragic"—not for Hawkins-Day, who made the conscious decision to sexually exploit a child—but for MV-1, a little boy who must carry the burden of these sexual assaults forever on his shoulders. Undoubtedly, this is a serious offense, and Defendant's attempt to downgrade this crime into an unfortunate consequence of Asperger's Disorder should give this Court great pause.

### B. History and characteristics of the defendant

As mitigation, Defendant presents a 15 year old evaluation that diagnoses him with Asperger's Disorder.  It is curious that Defendant has not been recently evaluated by anyone, because the psyche of a 29 year old man (his age now) most

certainly differs from that of a 14 year old boy (his age at the evaluation).  Most certainly, over the last fifteen years, Defendant aged, matured, gained intelligence, and otherwise changed in many ways (both good and bad).  That Defendant chose not to obtain an updated evaluation (or obtained one and is withholding it), and that Defendant expects this Court to rely on an outdated report, should concern this Court.  Because even if the diagnosis is accurate, it tells us nothing about Defendant's mental health today.  For example, one of the common themes in 2003 was that Defendant rigidly followed rules, to the point of obsession.  Today, his actions demonstrate that he has changed.  Not only did he commit horrendous sexual offenses, but he actively sought to cover his tracks, by quizzing MV-1 on proving he was a child, remaining alert for law enforcement during the sexual offenses, and even telling MV-1 that he did not want to leave any DNA behind. His rigid insistence on following rules is simply not true anymore.

Defendant boldly claims that he is "likely to respond well to treatment and terms of community supervision." Def. Mem., at 2.  Why?  What is the basis for this claim?  Defendant has shown this Court that he has no problem crossing the boundaries into illegal activity, and acting out his sexual urges on a very young boy. Defendant presented zero evidence to ensure to this Court that he would be amenable to treatment, that he would participate in treatment, and that treatment would be

effective at changing his behavior.[2] If the 2003 evaluation still rings true, "Michael gets fixated on things to the point he can't concentrate on his responsibilities." His most recent "fixation" concerned sexually assaulting a child and trading child pornography. Nothing presented to this Court weighs in favor of a downward variance.

Defendant's entire proposition to this Court is that he should only receive the bare minimum sentence because autistic individuals may be "completely unaware they have crossed a moral and legal line." Def. Mem., at 5. But this is not Defendant. He knew exactly what he was doing, and planned every action to avoid detection. Using a VPN requires some computer sophistication and purpose for using the software. Bragging about not being able to be detected by law enforcement shows his disdain for the law. Defendant claims that he "did not fully understand the harm he was causing until being charged." But his actions completely belie that claim.

Defendant cannot use his diagnosis of Asperger's Disorder as both a sword and a shield. He cannot claim that he was not capable of understanding his actions, and then assert that, "once [he] know[s] the rules, [he] will abide by them." Def. Mem., at 5. Defendant was fully aware of the criminal nature of his actions, as evidenced by his steps to conceal his activity. He knew full well that coercing a 12

---

[2] No study exists to support the proposition that desire for treatment lowers recidivism risk.

year old child to get into the back of his car in the dark of night for sexual activity in a public park was illegal, as evidenced by his remarks and actions.[3]

We have no understanding of the severity of Defendant's purported condition. But autism related claims have been rejected as a basis for a downward departure or variance. *See United States v. Zuk*, 874 F.3d 398, 410-411 (4th Cir. 2017) (finding downward variance from 240 month guideline to 26 months based primarily upon defendant's diagnosis of autism spectrum substantively unreasonable); *United States v. Morais*, 670 F.3d 889, 892 (8th Cir. 2012) (affirming guideline sentence and rejecting claim that autism diagnosis dictated a sentencing variance); *United States v. Lange*, 445 F.3d 983 (7th Cir. 2006) (affirming guideline sentence where district court rejected claim that autism diagnosis supported a downward departure based on diminished capacity); *United States v. Sindoni*, 510 Fed. App'x906 (11thCir. 2013)(within guideline sentence of 200 months upheld as reasonable despite defendant's Asperger's diagnosis and age); *United States v. Mandli*, Case No. 07-15246, 2008 WL 2123510 (11th Cir. May 21, 2008) (affirming within guideline sentence for defendant with Asperger's Syndrome convicted of child pornography possession) (unpublished disposition, cited for illustrative purposes); *United States v. Beasley*, Case No. 13-12629, 562 Fed. App'x745 (11th Cir. 2014) (upholding sentence that was 36 months below the advisory guideline range despite defendant's

---

[3] After these two meet ups, Defendant got rid of the car.

argument on appeal that his Asperger's Syndrome should have caused the court to vary further downward and impose the five-year mandatory minimum for receipt of child pornography.)

### C. Seriousness of the offense, promotion of respect for the law, and just punishment for the offense.

As discussed, this is a serious offense. And Defendant should be punished accordingly. These children are particularly vulnerable because individuals like Defendant have easy access to them by downloading applications that are almost exclusively used by younger children, such as KIK and Snapchat, the applications used in this offense.

As a society, we have set certain standards of conduct by which we must conduct ourselves, particularly when it comes to protecting our children. This Defendant sexually assaulted a small child – on two separate occasions. A sentence within the guideline range would reflect the seriousness of this offense, promote respect for the law, and provide just punishment.

### D. Adequate deterrence and protection of the public.

Deterrence is a key component in discouraging future criminal behavior and protecting the public. Defendant presented letters to this Court from his family. Most certainly, they are hurting. But Defendant is directly responsible for the reason he remains in custody. And while Defendant's family may have been hurt by his actions, an entirely different family – the victim of this crime, and his family – must

endure a pain that was thrust upon them by this Defendant's selfish acts. And the damage to MV-1 and his family will last forever. *See* Ex. A, Victim Impact Statements, filed under seal.

### E. Kinds of sentences available and the need to avoid unwarranted sentencing disparities.

A 188 month sentence in this case fits comfortably within the range of sentences that similarly situated defendants receive. Indeed, the guideline range is the starting point for determining a defendant's sentence. And here, Defendant already received a benefit of the parties' miscalculations of the guidelines. Had they been correctly calculated, the government would likely be seeking a higher sentence. As it stands, 188 months represents the low end of the properly calculated guideline range. Such a sentence would not create any unwarranted disparities.

### III. Conclusion

The government recommends a sentence of **188 months**' imprisonment.

        Respectfully submitted,

        MATTHEW SCHNEIDER,
        United States Attorney

        s/Margaret M. Smith
        Assistant United States Attorney
        211 W. Fort Street, Suite 2001
        Detroit, MI  48226
        Phone:  (313) 226-9135
        E-Mail: margaret.smith@usdoj.gov
        Bar No. P71413

Dated:  July 16, 2018

## Certificate of Service

I hereby certify that on July 16, 2018, I electronically filed the Sentencing Memorandum for the United States with the Clerk of the Court of the Eastern District of Michigan using the ECF system which will send notification of such filing to the following via electronic mail:

        Benton Martin
        Attorney for Defendant
        Benton_martin@fd.org

        s/Margaret M. Smith
        MARGARET M. SMITH (P71413)
        Assistant United States Attorney
        211 W. Fort Street, Suite 2001
        Detroit, MI  48226
        Phone:  (313) 226-9135
        E-Mail: margaret.smith@usdoj.gov